Filing # 29462219 E-Filed 07/09/2015 03:09:23 PM

FILED

IN THE CIRCUIT COURT OF THE 20TH
JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA

15 AUG 14 AM 10: 15

CLERK,
MIDDLE DISTRICT OF FLORIDA
FT. MYERS, FLORIDA

CAPITAL SOLUTIONS BANCORP, LLC,    CASE NO:

    Plaintiff,

v.

MILLERCOORS LLC, DENVER
CLEANING SERVICES, INC., and
CARLOS CASTILLO,

2:15-cv-488-FtM-38MRM

    Defendants.
_____/

## COMPLAINT

Plaintiff Capital Solutions Bancorp, LLC ("CSB") sues defendants MillerCoors LLC ("MillerCoors"), Denver Cleaning Services, Inc. ("DCS"), and Carlos Castillo ("Castillo") (collectively, "Defendants") and states:

### GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

1. This is an action for damages in excess of $15,000.00, exclusive of interest, attorneys' fees and costs.

2. CSB is a Florida limited liability company authorized to transact and transacting business in Lee County, Florida.

3. MillerCoors is a Delaware limited liability company authorized to transact and transacting business in Lee County, Florida.

4. DCS is a Colorado corporation with its principal place of business in Denver, Colorado.

5. Castillo is an individual believed to be residing in Golden, Colorado. Castillo is the owner of DCS.

6. On or about October 25, 2007, DCS, as Seller, entered into an Accounts Receivable Purchase Agreement with CSB, as Purchaser (the "Agreement"). A copy of the Agreement is attached as Exhibit A.

7. On or about October 25, 2007, in order to induce CSB to purchase DCS's accounts, Castillo executed and delivered to CSB an Indemnification Agreement (the "Indemnification Agreement"). A copy of the Indemnification Agreement is attached as Exhibit B.

8. Defendants are subject to the personal jurisdiction of this Court because:

   a. DCS irrevocably consented to the sole and exclusive personal jurisdiction of the State of Florida. See Exhibit A, § 21;

   b. Pursuant to Florida Statute § 48.193(1)(g), DCS and Castillo breached contracts in Florida by failing to perform acts required by the Agreement and the Indemnification Agreement, which were to be performed in Florida, including by failing to make payments required to be paid to CSB in Florida. See Exhibit A, e.g., §§ 3 and 4 and Exhibit B; and

   c. Pursuant to Florida Statute § 48.193(1)(a), (b), and (2), this Court has personal jurisdiction over MillerCoors because: (i) MillerCoors operates, conducts, and engages in business in Florida; and (ii) MillerCoors is engaged in substantial and not isolated activity within this state.

9. All conditions precedent to the institution of this action, if any, have occurred, been performed, or have been waived.

### Relationship between DCS and MillerCoors

10. At all material times, MillerCoors was a debtor of DCS, as defined by Florida

2

Statute § 679.1021(1)(c).

11. At all material times, DCS actually delivered goods to MillerCoors and/or performed services for MillerCoors (collectively, the "Services").

12. On or about October 1, 2014, November 1, 2014, December 1, 2014, and January 1, 2015, DCS completed the Services for MillerCoors, for which invoices were generated and delivered to MillerCoors. In addition to the invoices listed above, DCS submitted additional invoices for Services performed after January 1, 2015 (collectively, the "Invoices"). Copies of the October 1, 2014, November 1, 2014, December 1, 2014, and January 1, 2015 Invoices are attached as Composite Exhibit C; other Invoices are in the sole custody of Defendants.

### Relationship Between CSB and DCS

13. As stated above, CSB and DCS entered into the Agreement whereby DCS assigned its accounts receivable to CSB and granted to CSB a continuing first priority security interest in and to the right to collect certain Collateral (as defined in the Agreement), which includes all payments for all invoices from DCS to its account debtors, including MillerCoors.

14. On or about October 30, 2007, CSB perfected its security interest by filing a UCC-1 Financing Statement with File Number 2007F109759 (the "UCC-1"), attached as Exhibit D.

### Relationship between CSB and Castillo

15. As stated above, CSB and Castillo entered into the Indemnification Agreement whereby Castillo personally agreed to indemnify CSB for certain occurrences.

16. In the Indemnification Agreement, Castillo warranted and represented that:

    a. all original checks, drafts, notes, letters of credit, acceptances and other proceeds of the Accounts received by the Client would be held in trust for CSB and

3

would immediately be forwarded to CSB upon receipt;

      b.    none of the Accounts would be subject to any offsets, defenses, or counterclaims; and

      c.    that Castillo would indemnify CSB and hold it harmless from any direct, indirect, or consequential damage of loss which CSB sustained as a result of the breach of any representation or warranty contained herein.

*See* Exhibit B.

### Relationship between CSB and MillerCoors

17.    To protect its rights under the Uniform Commercial Code, on August 24, 2011 and then again on July 2, 2013, CSB delivered a Notice of Assignment to MillerCoors c/o Leroy Moore ("Moore"), advising MillerCoors of the assignment to CSB and MillerCoors' obligation to pay CSB for all invoices, rather than pay DCS. On February 27, 2015, CSB delivered a letter to MillerCoors reminding MillerCoors of its obligation to pay CSB and not DCS, for all accounts. Copies of the Notices of Assignment and the February 27, 2015 letter are attached as Composite Exhibit E.

18.    MillerCoors provided Moore a MillerCoors e-mail address with the MillerCoors domain, a phone line extension from MillerCoors, and (upon information and belief) a physical office at the MillerCoors premises, and security badge.

19.    Moore utilized the MillerCoors e-mail address, phone line, physical office, and security badge in a manner and purpose to benefit MillerCoors.

20.    CSB confirmed that Moore was an agent of MillerCoors by calling Moore at MillerCoors and confirmed that Moore's e-mail address was, in fact, authorized by MillerCoors.

21.    Based upon MillerCoors' conduct, Moore had apparent authority to receive the

4

Notices of Assignment on behalf of MillerCoors.

22. Immediately after the receipt of the July 2, 2013 Notice of Assignment, MillerCoors sent CSB an ACH Authorization Form to complete and return. CSB completed the Authorization Form and returned it to MillerCoors.

23. The Notices of Assignment specifically stated that DCS had assigned its accounts to CSB and instructed MillerCoors to deliver payments to CSB.

24. Notwithstanding the Notices of Assignment and notwithstanding CSB's first priority security interest in all of DCS's accounts, MillerCoors failed to deliver payments to CSB.

### COUNT I – WRONGFUL PAYMENT
### (Against MillerCoors)

25. CSB realleges the allegations contained in paragraphs 1 through 24.

26. After MillerCoors' receipt of the Notices of Assignment, MillerCoors could discharge its obligation to DCS only by paying CSB and could not discharge the obligation by paying DCS, pursuant to Florida Statute § 679.4061.

27. MillerCoors wrongfully paid DCS after receiving the Notices of Assignment. Upon information and belief, the total amount of the Invoices was approximately $600,000.00.

28. MillerCoors wrongfully paid DCS despite CSB's first priority security interest in and to the right to payments by MillerCoors for the Invoices.

29. MillerCoors' payments to DCS did not discharge MillerCoors' obligations to CSB.

30. As a result of MillerCoors' actions, CSB has suffered damages.

WHEREFORE, CSB demands judgment against MillerCoors for damages, costs, and any

5

eFiled Lee County Clerk of Courts Page 5

other relief that this Court deems necessary.

## COUNT II – ACCOUNT STATED
(As assignee of DCS against MillerCoors)

31. CSB realleges the allegations contained in paragraphs 1 through 24.

32. Before the institution of this action, DCS, as seller of the receivables to CSB, and MillerCoors, had business transactions between them, and they agreed to the resulting balances indicated on the Invoices.

33. Pursuant to the Agreement, DCS assigned to CSB its rights to collect the resulting balance from MillerCoors.

34. DCS, as seller of the receivables to CSB, rendered the Invoices for the resulting balance to MillerCoors and MillerCoors did not object to the Invoices.

35. By letter dated May 4, 2015, CSB, as the assignee of the right to payment under the Invoices, demanded MillerCoors pay the Invoices to CSB (the "Demand Letter"). A copy of the Demand Letter is attached as Exhibit F.

36. Despite demand, the balances of the Invoices are past due and owing.

WHEREFORE, CSB demands judgment against MillerCoors for the total monies due on the account stated, costs, and any other relief that this Court deems necessary.

## COUNT III – BREACH OF AGREEMENT
(Against DCS)

37. CSB realleges the allegations contained in paragraphs 1 through 24.

38. Pursuant to the Agreement, DCS agreed to sell, and CSB agreed to purchase, certain of DCS's accounts receivables and DCS granted to CSB a continuing first priority security interest in and to the Collateral (as defined in the Agreement) now owned or hereafter acquired by DCS.

6

39. Among other obligations under the Agreement, DCS implicitly or expressly:

   a. agreed that the Purchased Accounts would remain unconditionally owed and paid to CSB without defenses, disputes, offsets, or counterclaims;

   b. agreed to pay a misdirected payment fee in the event any payment was mistakenly paid to DCS; and

   c. agreed to deliver any misdirected fee to CSB on the next banking day following the date of receipt.

40. Notwithstanding its obligations under the Agreement, DCS breached the Agreement by, without limitation:

   a. receiving misdirected funds and not returning them to CSB; and

   b. failing to perform all terms, conditions, and obligations of the Agreement.

41. CSB has fulfilled all of its obligations under the Agreement.

42. Despite demand by CSB for payment of all monies due from DCS, DCS has failed to pay CSB.

43. Accordingly, DCS is in default under and in breach of the Agreement, causing damages to CSB.

44. The Agreement provides that CSB shall be entitled to reimbursement of its attorney's fees and costs.

WHEREFORE, CSB demands judgment against DCS for damages, interest, fees (including Misdirected Payment fees), attorney's fees, and costs to prosecute this action, and for any other relief that this Court deems necessary.

## COUNT IV – BREACH OF INDEMNIFICATION AGREEMENT
### (Against Castillo)

45. CSB realleges the allegations contained in paragraphs 1 through 24.

46. To induce CSB to enter into the Agreement, Castillo executed and delivered the Indemnification Agreement to CSB. *See* Exhibit B, pg. 1.

47. As alleged above, Castillo made inaccurate representations and warranties to CSB.

48. Specifically, and without limitation, contrary to the representations and warranties in the Indemnification Agreement, on more than one occasion, DCS received funds from MillerCoors and failed to delivery payment to CSB, in accordance with the terms of the Indemnification Agreement.

49. Pursuant to the Indemnification Agreement, Castillo personally agreed to indemnify CSB and hold it harmless from any direct, indirect, or consequential damage of loss which CSB sustained as a result of the breach of any representation or warranty contained therein.

50. As a result of Castillo's breach of the Indemnification Agreement, CSB has been damaged.

51. Pursuant to the Indemnification Agreement, CSB is entitled to reimbursement of its attorney's fees and costs.

WHEREFORE, CSB demands judgment against Castillo for damages, interest, attorney's fees, costs to prosecute this action, and for any other relief that this Court deems necessary.

Dated this 9th day of July, 2015.

                                      Respectfully submitted,

                                      **LOREN & KEAN LAW**
                                      Attorneys for Plaintiff
                                      7111 Fairway Drive, Suite 302
                                      Palm Beach Gardens, FL 33418
                                      Phone: (561) 615-5701
                                      Fax:   (561) 615-5708

                                      s/ Allen J. Heffner
                                      **ALLEN J. HEFFNER**
                                      Florida Bar No. 84252
                                      aheffner@lorenkeanlaw.com
                                      **BRUCE E. LOREN**
                                      Florida Bar No. 947105
                                      bloren@lorenkeanlaw.com
                                      clucht@lorenkeanlaw.com